I'm Kimberly Albrow and I'm here on behalf of the appellant, Mr. Montes-Flores. I'm going to address one issue today and that is why assault and battery of a high and aggravated nature which is referred to commonly as ABHAN is not a crime of violence for purposes of 16 level specific offense characteristic applied in Mr. Montes-Flores' case under the guideline 2L1.2. In our case, ABHAN was analyzed by the district court only under the modified categorical approach. And I believe the recent cases of Descamps and Gomez set out a framework which makes ABHAN, makes the modified categorical approach the wrong approach to apply to ABHAN. In Descamps, the court made it very clear that the modified categorical approach is used in very limited circumstances. First of all, the offense of conviction has to be one that is divisible. And by that, that means it has to have, it cannot have single indivisible elements. If it's used when the modified categorical approach is applied, the court, the district court is not to look at the facts of the case at all. And I think sometimes in the past, perhaps the courts have looked at the facts, but Descamps made it very clear that that's not to be done. I think Gomez, even though it was decided before Descamps, pretty much follows the reasoning of Descamps. And it also says that the modified categorical approach can only be used when the offense of conviction is divisible. It went on to say that divisibility is not just a general divisibility, but it would be based on forceful versus non-forceful acts. And the court should not look at the means or manner in which the offense was committed. Now you think, what about that case of Judge Traxler's that we talked about? You claim that helps you? I do believe that that case helps us in the fact that it was related to the child abuse statute, which was the same statute at issue in the Gomez case. But they also emphasize that this general divisibility is not enough for the modified categorical approach to apply. So I think that's helpful to us because it also emphasizes that you focus on the elements and not the facts, which I don't think was done in our particular case, which is why I think that Umensor case is helpful to our position. I think the first thing that you reach when the court is trying to decide whether or not the modified categorical approach can apply is the divisibility issue. And I would submit to the court that Abhan is not divisible. The case law defines Abhan as a violent injury or harmful or offensive conduct accompanied by circumstances of aggravation. And the South Carolina cases specifically state that the circumstances of aggravation is an element of the offense. Now the cases go on to list all kinds of circumstances of aggravation, but they're non-exhaustive. They could go on and on and on. In this case in particular, the indictment in this case did not list the circumstances of aggravation as defined in South Carolina case law. For example, some of the circumstances of aggravation in the South Carolina cases include use of a deadly weapon, infliction of serious bodily injury, resistance to lawful authority. But in this case, and what the district court focused on, was the term use of hands. That's what was described as the circumstance of aggravation in the indictment when Mr. Montes Flores was convicted in state court. What about Savignon Matute? What about the case of Savignon Matute about assumed error harmlessness review? What about that? I'm not familiar with that case, I have to admit. As far as the, I don't know that. Well now the government raised it in their brief. Did you see it in their brief? I did not see that, I apologize. Well they're saying that harmless error applies here. And if there was any error, it's harmless, and you lose. Well we would disagree that it's harmless error because of the. Well your argument is it was error, and they're saying well, it's not error, but if it is error, you lose anyhow because it's harmless. Well the 16-level enhancement. The A stands for that proposition. I apologize. Well how do you get around harmless error? Well I would say that it's not harmless error because it is a 16-level enhancement, which we raised the issue below as far as whether this particular abhand was a divisible statute and whether or not it should be applied. But the level of the enhancement doesn't matter particularly under Savignon Matute though. If you don't know that case, I guess you don't know that case. It was Savignon Matute, I think, could be read, but it's generally understood to stand for the proposition, that if the court has made it clear that's the appropriate sentence, that the court feels is the appropriate sentence under the sentencing factors or what is to use to sentence, then any error they might make in guidelines doesn't really matter. It's sort of mooted out because if the court thinks it's the appropriate sentence anyway, what does it matter about an error under the advisory guidelines? You understand what I'm saying? I do, Your Honor. So then do you want to argue under Savignon Matute? What is your argument? I don't think it really hinges on the level. The amount of the enhancement might matter because it still has to be a reasonable sentence, but as far as the assumed error but harmlessness, what do you say about that? Well, I appreciate the explanation, Your Honor. I hope I gave it to you right. I wrote the opinion. I hope I told you right. I appreciate it, and when you explained it, I do recall reading that in the government's brief that their position is that it was clear that the district court would have made— Now you're on it. Now you're on it. I apologize, Your Honor. Would have made the same decision, but I don't think that's clear at all from the record because I do believe— What was the guideline that's calculated out by the court, remember? I do not, Your Honor. I didn't do the trial in this, and I don't suppose— What was he sentenced? He was—I think he was sentenced— He was sentenced to 46 months, I think, and the guidelines were 46 to 57. What should be the guideline range, if you're right? Well, it would be—the level would be 8, and we acknowledged that it was a felony, so it would be 4. That's a level 12. I don't have my guidelines book with me, but it would be a level 12 rather than the level at which he was at, so it would be significantly less than the 46 months. And I do believe that in his explanation, the court focused very much so on the violence of the offense and how the court interpreted the indictment, and I don't think it was clear at all that if that abhand conviction could not be considered, that he still would have reached the same level. I think he would have—the court would have had to have made an upward departure in the case to reach that level. So I would say that the harmless error does not apply. As I was saying, the divisibility issue, we would say that this is—it's more than general divisibility. It's more than—it has to be this divisibility of forceful versus non-forceful conduct, and we don't believe there is divisibility in abhand, that the circumstances of aggravation as they are listed are not additional elements. They are simply means in— To that extent, you're rehashing the arguments we just heard. Correct. Right? That's correct. Is there any difference, well, that you know of between the position the government's taken in this case and the position that the government's taken in the previous case? Not to my knowledge. The one question was whether it was a— That's a better question for the prosecutor, but I was giving you a—make a preemptive strike here if you want to. Well, correct, and I was very curious myself as to whether it was a DOJ position that this cannot categorically be a crime of violence, and I think that Mr. Booth answered that question in the previous case. And just as a side note, Mr. Nettles is my colleague. I also did some work on the Hemingway case, so I would agree with all the arguments that he made as well as far as why Abhan is not a crime of violence in my case. But that gets me to the point as far as this categorically nonviolent—I mean, the issue really boils down to is the statute—not statute, the common law offense of Abhan divisible or not divisible, because it's kind of—it is somewhat a nonissue, although the court can make a different decision. The government has conceded that Abhan cannot be categorically violent. Additionally, I think the Karimi case is relevant because this is where the court held that the offense of conviction could not be categorically violent because the offense of conviction covered both violent and nonviolent. Well, get into defense counsel. Well, I don't want to say defense counsel. Who was Walsh? She is an assistant federal public defender, and she handled— Well, she suggested a sentence of three years, 36 months, didn't she? Do you remember that? I believe so. Yeah. So, I don't—maybe that was wrong, but she said three years. The judge said—she said 36 months. The judge said 46 months. It was the bottom of the guideline range, but also 46 months, and he talked about various reasons he thought that was appropriate to deter him and those kind of functions like that. But so, you think the judge missed it by 10 months? What do you think? The 36 months that she asked for was as far—she filed a sentencing memorandum asking for a variance if she could not prevail on the argument that Abhan was not a crime of violence. And so, I think the 36 months was as far as a variance was concerned related to the sentence. I don't know what that means. Do you think she thought 36 was appropriate, or are you suggesting that 36 is appropriate after losing on the Abhan issue? I think she argued for the variance from the guideline range with Abhan— From the 46 to 57. She was arguing to come down? From the guideline range with the Abhan counting as a crime of violence. So, after the 16—after she'd already lost the 16-level enhancement? Correct. Because there's a sentencing memo in which she or your office suggested that the 8-level base level offense level plus 4, it would be the appropriate range, so a level 12. Correct. And my understanding is, although I don't want to presume to read her mind, but my reading of the sentencing memorandum and my recollection of the sentencing hearing transcript is that she was arguing in the sentencing memorandum both that Abhan was not a crime of violence and that she would like a variance from the guideline range as it was with Abhan counting against our client. Let me ask you one thing here, if you're right, the modified categorical approach doesn't apply here. Does or does not? Does not apply. Okay. So, if you're right, under the authorities now, the modified categorical approach doesn't apply here, so you're saying the judge erred by using it, correct? Correct. And then, so it goes back to the categorical approach is the only thing he could have used, correct? Correct. And the government in the other case conceded that Abhan's not categorically a violent felony. Can you take advantage of that? Are they taking the, go ahead. I believe that because of the position, the entire Department of Justice has taken that position that it's categorically not a crime of violence that the court would be bound by that. Of course, I mean, the court has some discretion in deciding whether or not they're correct. So, unless it's harmless error, it has to go back to re-sentence. That's my belief. Because even if the modified categorical approach applied, which is not my position, but if it did apply, I think that it wasn't applied correctly in this case. I think the decision- I thought your position is that the categorical approach is the only thing that applies. That is my position. And it's not a, you're saying it's not a crime of violence under the guidelines. The other case, we had it as a violent felony under the statute, but the government conceded it was the violent felony under the statute, correct? Correct. And they said the modified categorical approach applied. That was their position. But my, just to cover all scenarios- You're making the same argument you said Ms. Walsh made. In case you lose on that point, you have another position you want to take to still get you where you want to go. Correct. Because even if these various circumstances of aggravation as defined in the state case law were elements, most of them, if not all of them, can be committed recklessly and violently or non-violently. And for example, to use the use of hands, which was cited in the indictment in Mr. Montez Flores' case, the use of hands could be like the South Carolina case where an ad paying conviction occurred from the man reaching through the window and touching the woman's neck. That's not physical force as defined under the guidelines for these purposes. So the use of hands itself, as cited in this indictment, could be violent or it could be not violent. So under the categorical or the modified categorical, in this case, our position is that this enhancement should not have been applied. And unless the court has any further questions. Thank you. Mr. Bianchi? Bianchi. Yes. I'm sorry. Bianchi. Good to have you here. Thank you, Your Honor. Good morning. My name is Nick Bianchi. I'm here on behalf of the United States. Our position, as you hinted similar to Mr. Booth previously, is that ABHAN, and again, using the acronym for Assault and Battery of a High and Aggravated Nature, but that that's why the modified categorical approach is appropriate. We concede that if the court believes the categorical approach is the way to go, our position is that it cannot be ruled to be categorically violent. Now, if the categorical approach is the appropriate way to go, you don't diverge from Mr. Booth's position. Correct. We jump straight to harmless error at that point. Okay. That's what I was trying to tie you down on that. Yes, Your Honor. That's correct. Okay. You say the modified categorical approach is what applies, and it's a divisible statute. We do say that. Well, it's a common law crime, but yes. It's a divisible crime. Divisible offense. Yes, Your Honor. So that's why we think we've got the first element is the unlawful act of violent injury, but our position is that the second element is the specific aggravating circumstance within that ab-hand indictment. As Mr. Booth stated earlier, the courts refer to it as a non-exhaustive list, but time after time in every case, they list the same aggravating circumstances. Our position is it's sort of akin to if it were codified and subsection A said unlawful act of violent injury and subsection B said one of the following aggravating circumstances and then listed those out. We think if that were the case, that it is divisible because you have some of those aggravating circumstances. Have we heard this argument today? We have, Your Honor. Let me ask you this. Do you want to talk about Savignon Matute and make your argument there? I do, Your Honor. I think, Your Honor, in the event that we get to a harmless error analysis, I think it's almost identical to the issue in Savignon Matute. Well, if in fact, if you, I'm not saying you do, but if you are correct on Savignon Matute, why, you said in the event that, why would you even consider? Your Honor is correct. I think if there's harmless error, that it doesn't matter if the court were inclined to start making specific rulings on that. We would assume error and then go to Savignon Matute, isn't that correct? I believe so. We don't discuss error. We just assume it. Okay. Where do you stand on Savignon Matute? Your Honor, our position is that the error is harmless. Why so? Because the district court was very thorough here in its analysis. The district court gave him 46 months and the top of the guidelines might be 24 months. Correct. But I don't think, I think he made a sufficient enough record in this case to support that ruling. This wasn't a crime of violence. But it's not enough that he made a, as you, if he did make a sufficient record to support that sentence, he needs to, you need to be able to point to somewhere in the record that makes it clear that the district court would have given the same sentence. He would have to depart upward if they're there. That's correct. By 22 months. That's correct. Please. As Judge Shedd pointed out earlier, in this case, the defense asked for a specific sentence of 36 months. Well, that was after they determined that the guideline was 46 to 57. Correct. But the guidelines are still advisory. If the guidelines have been 18 to 24, I don't believe you find a public defender willing to accept 36. No, but I also . . . But the public defender in its sentencing memorandum, that's not what they asked for. No. They argued the double counting. They don't throw out any specific number. You're correct in that . . . If there's error, we're going back there. Right. But I believe that, you know, the guidelines are advisory. If the court felt that 36 months were appropriate based on everything, it would have been fine to depart to that. But obviously, it felt like going down to 36 months wasn't appropriate in this case given the defendant's history, given the 3553A factors here. Because we've got deterrence, not just in the general sense of every crime, but in this case deterrence to deter the appellant from coming back into this country. So we've got another level of deterrence . . . I thought you had to start by getting the guidelines right, the range. Get the right guideline range. The court does, doesn't it? I'm sorry, Your Honor? I thought the court had to . . . the sentencing court needed to get the guideline range right and then start. Right. So in the event . . . No. Are you sure that's right under Savignon-Matute? Are you sure about that? Maybe I'm misunderstanding the question. It's an easy question. He said the first thing you have to do is to get the guideline right. Is that correct under Savignon-Matute? I don't believe it is, Your Honor. I don't think it went into what the guidelines would have been had the court ruled . . . If you don't look at Savignon-Matute, the first thing you have to do is get the guideline right. Correct. But I think under Savignon-Matute, they didn't say, well, let's go back and look at what the guidelines would have been. Let's just see if there's enough here to support the district court's decision. Because under the appropriate circumstances, and isn't it correct under Savignon-Matute that a defense lawyer could stand up and say, our version of the guidelines is X, 12-18. The government could stand up and say, well, our version of the guidelines, looking at what we think is appropriate, is 36 to whatever the range is, 43. The court could go, I don't really care what either of you say about that because I've looked at it. I believe the appropriate sentence is this under the sentencing factors and go through that and I guess possibly not even come up with a guideline range and just go . . . That's correct. This is what I want to give under any circumstances. That's an extreme case, but . . . Right, no, Your Honor is correct. The district court has full autonomy to look at 3553A and come up with what it thinks is the appropriate sentence, regardless of what anybody's version of the guideline range is, as long as it's within the statutory . . . Inreasonable, we judge it for reasonable . . . Correct. You're saying the court doesn't have to get the guidelines, right? It doesn't make any difference. They're wasting a lot of time. Under Savignon-Matute, I think that position, to some extent, is supported that we don't have to look at, if the district court erred on calculating the guidelines, what they should have been. I think they just look at the sentence he got in this case and then look at whether that's reasonable and I think the record supports that that sentence was a reasonable sentence. You know, the district court was very thorough and even went as far as to ask the one person who showed up, tell me what other people would have said had they shown up. So the district court gave the appellant every benefit in this case in his counsel's argument for a variance in this case and still found it wasn't appropriate. But doesn't Savignon-Matute require more than reasonableness? Doesn't it also require knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way? That is the first factor in the assumed harmless error inquiry. So how do you get beyond that? I don't have the case in front of me, but I believe that the district court doesn't have to specifically say, even if the guidelines were different, I would give you the same sentence. I don't think they have to make that statement. Okay, so what did the court say that makes you think that the court would have given the same sentence, even if he didn't use those types of words? I've got statements I cited in my brief, which I don't have right in front of me, regarding the court's concern for, I think it was to give him a disincentive to reenter this country. The court discussed his multiple convictions for DUI that were all treated as DUI first offense, even though clearly, by the second one, he had more than one. He talked about his prior conviction for another crime with a weapon. In this case, he's got a weapon on him. The court said, I've got to make a sentence which is sufficient but not greater than necessary. I use the factors under 3553A to reach that, and I must reach a reasonable sentence. Ultimately, what he comes up with as reasonable is 46 months. My position is, those are some examples of how we know that that was what the court deems a reasonable sentence, not just a guideline sentence. You're saying, there aren't any talismanic words that have to be said, it's just you look at the record and can you tell from the record that he has considered the factors appropriately and can you tell from the record that this is what he thought the appropriate sentence was under those factors? That's correct. And by the way, people could disagree with whether or not the record reflects that, but it's just your argument that the record in fact does reflect that when you look at those statements that you cite in your brief, and he does go through other factors at the end more specifically. He's a devoted son, he walks through, he takes through those factors. I'll look at the history and characteristics, but he does talk about, as you say, people can disagree with this, but that I need a sentence to deter him from coming back. And so you look at that and you say it's clear to surmise from that that he thought 46 was the appropriate sentence under these facts, under the factors, regardless of whether or not there's a guideline miscalculation. That's at least your argument, isn't it? Yes, Your Honor. But he imposed a guideline sentence. Correct. It does happen to be at the bottom of the guidelines. It happens to be at the bottom of the guidelines. He didn't make a departure upward. No, he did not make a departure upward. Nor did he make a departure upward. We'd have to assume he would make a departure upward and would impose a non-guideline sentence. I think obviously that would have to happen if the guidelines were lower, but I think Right, right. I'm sorry. That's what you're assuming, that there's error, that you're saying it's harmless. There's error. He used the wrong approach. Guidelines should have been 18 to 24. He would have departed upward 22 months and imposed a sentence that was 22 months above the guidelines rather than sentencing at the bottom of the guidelines. And again, After he imposed the guideline sentence. The court doesn't have to use the magic words of, if the guidelines are lower, I'd give him the same sentence, but I think when you look here, I think it's, he's stated clear enough reasons for that. We don't have to look under Savion Matute at what the guidelines would have been had the district court. Well, I guess technically he could have departed or he could have varied. Yeah, exactly. I mean, the guidelines are advisory. He could vary. And I think He could. It's absolutely right. Absolutely right. But the answer to the question is You can make all that argument to Judge Gergel and he might give him another 46 months after he recalculates and says it's 18 to 24, but I think he ought to get 46. You might well do that. Right. And I think such a sentence would be upheld on appeal. Why should the appellate court get into the sentencing business? Well, I mean, because our position By the way, have we sentenced anybody to anything? No, Your Honor. We aren't in the sentencing business. We're in the review of sentencing business. Right. And I Well, that's right. And you want us to get in the sentencing business. I'm willing to say we shouldn't get in the sentencing business. We ought to leave it to the district court. I think if the case were remanded to Judge Gergel and he said the exact same things on the record that he said before and the appellant came back and appealed that sentence. Well, you have to pay. You have to say some different things because this Abhan under the concession made, if she's right on the camps, under the concession made by Mr. Booth that the government's bound by, it's not a crime of violence anymore. Right. But I don't think that Yeah. So that one doesn't count. But I don't think that takes away any of the district court's concerns with that actual what the language in that indictment and what It may not. It may not. And the district court may well say that. But you're not the district court. No. You're the advocate for the United States of America. That's correct. And it's your view that under the law in this circuit, Sabin Yamahtou, that you in fact can say you think it's clear from what he said that he thinks 46 months is the appropriate sentence. People can argue about guidelines and errors and all that. But you think, that's why I say people might disagree, but it's a completely valid position for you to take as the representative of the government that you read this record that this is what he thought was the appropriate sentence under the sentencing factors. Now, by the way, the Court of Appeals may not agree with you, but that is the position that you are allowed to take under the precedent in this circuit. Absolutely. That's our position. We cite Sabin Yamahtou. That is absolutely 100% our position. Whether the court ultimately agrees with it or not, we'll see. But again, that's our position, and I don't think it's completely unfounded to take that position. No, no. I'm not criticizing you for taking that position. No, no. You don't understand. Oh, no, no. You need to advocate for the government. All we got to do is understand what the government's advocating for. Correct. And you're bound by what Mr. Booth said in the positions that have been taken here, and you say, though, that Abhand is divisible and this is a crime of violence. Correct. You haven't given that up. No. You're on our first position. In that case, if you're right on that, we never get to harmless error. Correct. And so it's kind of, you can go one way or the other. Are you feeling good about that argument on Abhand? Just wondering. I am. As of right now, I am. Okay. Your Honor, again, and if the court would like me, I know Mr. Booth covered that ad nauseum. Maybe I should say this. At least you're up here supporting the judge. Your guy from Washington came down here, he abandoned the judge. Thankfully, the folks in Washington decided that South Carolina Abhand was not categorically violent before I had to respond to the sentencing memorandum in this case. We just got a call from the Department of Justice, the clerk has a message for you. Oh, goodness. So, no. Thankfully, at least in this case, we've been consistent. To my knowledge, to my best recollection, I've never filed an Abhand brief with this court saying it's categorically violent, but it certainly, it put the line AUSAs in the district in South Carolina in kind of an awkward position, but that's where we are. I'm confident your office has done that. The office of the U.S. Attorney in South Carolina has done that. And so, again, our first position is that it's divisible because those are alternative elements listed in that category of factors. Their position is aggravating circumstances is a factor. Ours is the specific. And if we decide, for example, if we would write that first opinion, the Hemingway opinion first and decide some of that, it might carry over to this case. Absolutely. You wouldn't have to sign it all twice. There would be a lot of carryover. A lot of the same issues, I know the definitions used under ACCA and 2L1.2 are slightly different as well as the 4B1.1 career offender. For instance, if the appellant in this case had pled to count two of the indictment instead of count one, we'd be looking to 4B1.2 instead of 2L1.2, which don't quite line up just the same, so we've got a little bit of intricacy there, but the bottom line is our position is one, Abhan is divisible. The district court correctly used the modified categorical approach and then correctly ruled that this particular indictment was a crime of violence. And in any event, whether this court were to ultimately rule it's categorically nonviolent or modified categorical as approached, but the district court got it wrong with this indictment. There's also a subsidiary issue in here, in this one, about aggravated felony. Correct? Correct. And that was never, the district court didn't get to that because he found it was a crime of violence. Right, because If it's determined not to be a crime of violence, could it also be an aggravated, could it still be an aggravated felony? I think when you start to get into the weeds and look at what aggravated felony is defined as and crime of violence That's a different enhancement, that's 8 instead of 16 or something. Just a felony is the 8. They conceded it was a felony and then it's whether this was a crime of violence in this case. But he didn't rule on the statutory issue because we knew the guidelines were going to be well below the 10 years for illegal reentry regardless. So the court focused on the issue of the guidelines in this case. But the aggravated felony part you didn't address in your brief. No. Because I think the guidelines issue is dispositive in this case. You know, if it were the idea that the guidelines for this crime of, if the guidelines had been somewhere on either side of 120 months, I think the district court would have obviously had to deal with that and make a specific determination that this was an aggravated reentry. But it neglected to do that. Instead, I think all parties at sentencing got completely focused on the guidelines issue. I think I've stated my position on both ends as clear as possible, but I'd be glad to answer any questions the court has. Appreciate it very much. Thank you, Your Honor. Ms. Albrow, you've saved a couple minutes. Thank you. I just wanted to briefly address the Savignon Matute case because I did not do a very good job of that in my opening. I did, I agree with Judge Thacker. She pointed out to the government that the standard is knowledge, whether there is knowledge that the court would have reached the same decision and in spite of the excerpts from the transcript cited by the government, I don't think that that knowledge was reached in this case. On page 77 of the joint appendix, the court asked Ms. Walsh why the guidelines weren't reasonable. So it was clear he was focusing on the guidelines and that is what he was focusing on in making his sentence. Additionally, in the joint appendix on page 95, the judge went through his various reasons for his sentence and it was basically the run-of-the-mill 3553A factors and he also balanced that with the personal qualities of Mr. Montes-Flores because Mr. Montes-Flores had people come and speak on his behalf, presenting letters and what have you. So I believe that factor weighed in his favor and if there was not a crime of violence involved, I think it's reasonable that the district court judge may have still sentenced within the guideline range, whatever that might have been, without ADPAN counting as the crime of violence. Also, I would just point out that I believe that when there's an upward departure, more explanation is needed than what was provided by the district court. Let me ask you this, do you think a district court, even if it can't count it as a crime of violence, could consider the facts of that underlying act by the defendant in deciding the appropriate sentence? I think he can consider the history and characteristics . . . He could, couldn't he? He could look at the crimes that he's committed . . . In other words, he could say, I can't count it at ADPAN, so your guideline range doesn't do it. But quite frankly, that was brutal, I'm just, not your client, but say that was brutal and for that you have no respect for the law and factor that into his, what he thinks is the appropriate sentence under the factors, 3553 factors. I agree that he could consider that just like he considered the DUIs, but there was no indication on this record that would rise to the level of knowledge that he would consider it . . . I was asking you that question, you said because if he didn't consider that ADPAN a crime of violence, he might not have done it, but the point is the facts of the underlying conviction are still there. Correct. For him to know. Correct. And he could consider it just like he did the DUI, I just don't think on the record we have before us that there is clear knowledge that the judge would have given Mr. Montes Flores the same sentence. And I just wanted to briefly say the statutory maximum issue, the court didn't reach that decision but an aggravated felony under, the aggravated felony issue under the statute relates to the maximum, the 20 years. When the court said after much discussion, I need to have a sentence to deter him from coming back across again, you think it's understood that he carried it in and it has to be in the guideline somewhere. You think that that's what he meant when he said I need to have a sentence to deter him from coming back across again, that he said parenthetically from a range within the guideline, you think he added that? Not necessarily at that point, but on the joint appendix, page 77, he did specifically ask Ms. Walsh about why the guidelines weren't reasonable. To me, that means he was considering everything within the guidelines. Doesn't his sentence have to be reasonable anyway at the end though? Even under 7 Yamatude, it has to be reasonable. Sure, it has to be reasonable, but he specifically asked reasonable within the guideline. I know, but if he's thinking about a 46 month term, it's not anything improper, it's probably good for the judge to ask if you think that's unreasonable. Don't you think? Because he wants to get a take on what sentence he wants to impose if somebody thinks that's unreasonable. Right, I would agree with that, but I also think that it shows that he was thinking within the guideline range and does not show that he would have given the sentence anyway. If he had said, I've heard what you said, I ruled against you on ab hand, but even if I didn't, 46 months is the right sentence here, then he should be affirmed under 7 Yamatude. Well that would make it clear, but I do understand that the government cited a case where it doesn't have to be so specific as that. If he just said, everything he considered in this case, everything he considered, guidelines and all, whether they're right or wrong, I think 46 months is the appropriate sentence. That would be sufficient to be sustained, do you think? I certainly think it would support the government's position, if he said that. Thank you very much. Thank you. We appreciate it. We'll come down and we'll
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker